UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
NEMESSIS ZUBIRIA,

                                        Plaintiff,

                                                                    **COMPLAINT**

        -against-

EXPRESITO, INC, and ALFREDO PADILLA,

                                        Defendants.

------------------------------------------------------------------------X

<u>**JURISDICTION AND VENUE**</u>

1.  This action arises under Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq.), the Pregnancy Discrimination Act of 1978 (42 U.S.C. § 2000e(k)), the Pregnant Workers Fairness Act (PWFA, 42 U.S.C. § 2000gg et seq.), the New York State Human Rights Law (N.Y. Exec. Law § 296), the New York City Human Rights Law (N.Y.C. Admin. Code § 8-107), and the New York Labor Law (NYLL).

2.  This Court has original jurisdiction under 28 U.S.C. §1331, Federal Question, with reference to the Plaintiff's claims under, Title VII,PDA,and PWFA. Plaintiff further invokes the supplemental jurisdiction of this Court pursuant to 28 U.S.C. § 1367 overall state claims so related, as the state claims form part of the same case or controversy pertaining to Plaintiff's claims under, Title VII,PDA,and PWFA.

3.  Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. §1391, as Defendants conduct business in Queens County New York and Plaintiff performed work within Defendants' facility in Queens County New York, and a substantial part of events or omissions giving rise to the claim occurred in Queens County.

<u>**THE PARTIES**</u>

<u>**PLAINTIFF**</u>

4.  Plaintiff NEMESSIS ZUBIRIA hereinafter ("Plaintiff") or ("Plaintiff Zubiria") or ("Ms. Zubiria")  resides at 3710 10th Street., Long island City, NY 11101.

<u>**DEFENDANTS**</u>

5.  Defendant EXPRESITO, INC or ("Defendant Expresito") or ("Expresito") is a Domestic Business Corporation located at 102-46 Corona Ave., Queens, NY 11368.

6. During any period of time whatsoever during the six years immediately preceding the filing of this Complaint, Defendant Expresito performed one or more of the following actions: (1) hire the Plaintiff (2) terminate the employment of the Plaintiff (3) set the wage rate of Plaintiff (4) maintain payroll records concerning Plaintiff, or (5) institute work rules for the Plaintiff.

7. Defendant ALFREDO PADILLA or ("Defendant Padilla") or ("Mr. Padilla") is the CEO of Defendant Expresito located at 102-46 Corona Ave., Queens, NY 11368.

8. During any period of time whatsoever during the six years immediately preceding the filing of this Complaint, Defendant Padilla performed one or more of the following actions: (1) hire the Plaintiff (2) terminate the employment of the Plaintiff (3) set the wage rate of Plaintiff (4) maintain payroll records concerning Plaintiff, or (5) institute work rules for the Plaintiff.

9. Defendant Expresito, and Defendant Padillawill hereby be referred to jointly as ("Defendants") unless otherwise noted.

## **BACKGROUND FACTS**

10. Defendant Expresito is a domestic business corporation that provides package and freight delivery services at both local and international levels.

11. At all times relevant hereto, Defendants employed more than 15 employees and was located in New York City.

12. Ms. Zubiria was an employee of Defendants. The locations where she was required to work changed regularly, as she was assigned to any of the four locations in New York based on operational needs.

13. Defendants hired Plaintiff Zubiria as a w-2 non exempt wage earner.

14. Ms. Zubiria began her employment with Defendants in May 10, 2024.

15. Plaintiff Zubiria stopped working for Defendants on October 11, 2024.

16. Defendants hired Ms. Zubiria as a counter cashier. Her job responsibilities included, but were not limited to counting cash.

17. Plaintiff received a right-to-sue letter from the EEOC on November 18, 2024. **Ex. 1 2025.02.04 _EEOC Right to Sue_**

**WORK SCHEDULE HISTORY**

18. Between May 2024 and July 22, 2024, Plaintiff's general work schedule was as follows:

| Day | Start Time | End Time | Total |
|---|---|---|---|
| Sunday | 10:00 AM | 4:00 PM | 6 Hours |
| Monday | 9:00 AM | 6:00 PM | 8 Hours |
| Tuesday | 9:00 AM | 6:00 PM | 8 Hours |
| Wednesday | 9:00 AM | 6:00 PM | 8 Hours |
| Thursday | OFF | OFF | OFF |
| Friday | 9:00 AM | 6:00 PM | 8 Hours |
| Saturday | 10:00 AM | 4:00 PM | 6 Hours |
| Total Hours | 44 Hours | | |

19. Between July 22, 2024, and August 2024, Plaintiff's general work schedule was as follows:

| Day | Start Time | End Time | Total |
|---|---|---|---|
| Sunday | 2:00 PM | 6:00 PM | 4 Hours |
| Monday | OFF | OFF | OFF |
| Tuesday | 2:00 PM | 6:00 PM | 4 Hours |
| Wednesday | OFF | OFF | OFF |
| Thursday | OFF | OFF | OFF |
| Friday | OFF | OFF | OFF |
| Saturday | 2:00 PM | 6:00 PM | 4 Hours |
| Total Hours | 12 Hours | | |

20. Between September 2024 and October 2024, Plaintiff's general work schedule was as follows:

| Day | Start Time | End Time | Total |
|---|---|---|---|
| Sunday | OFF | OFF | OFF |
| Monday | OFF | OFF | OFF |
| Tuesday | 10:00 AM | 6:00 PM | 8 Hours |
| Wednesday | OFF | OFF | OFF |
| Thursday | OFF | OFF | OFF |
| Friday | OFF | OFF | OFF |
| Saturday | 10:00 AM | 4:00 PM | 6 Hours |

| Total Hours | 14 Hours |
|---|---|

## SEXUAL HARASSMENT FACTS

21. Upon information and belief, Defendant Expresito is owned and operated by a married couple, Marcela Cadena ("Ms. Cadena") and Alfredo Padilla ("Mr. Padilla"). Together, they exercised significant control over the company's operations, including disciplining employees, set work schedules and employment conditions, and oversee employment records.

22. Ms. Zubiria consistently maintained a strong professional relationship with her colleagues, diligently performing her assigned duties. She approached her work with gratitude and enthusiasm, appreciating the opportunity to build a stable life as a recent immigrant from Ecuador.

23. Although hired exclusively as a cashier, Defendants progressively assigned Ms. Zubiria additional responsibilities outside her job description, such as cleaning, organizing, and packaging goods. These tasks were imposed without prior consultation, adjustment to her compensation, or the assignment of similar tasks to other employees.

24. In early June 2024, Mr. Padilla explicitly directed Ms. Zubiria to stand outside the store to distribute flyers. This assignment was entirely unrelated to her designated cashier role and was exclusively imposed upon her; no other female employees were required to perform this task.

25. When Plaintiff inquired why she was being asked to distribute flyers, Mr. Padilla dismissed her concerns and instead referred to her physical appearance as the reason. In Mr. Padilla's words: "Nemessis, ya te lo dije, tú eres una pela' bien bonita y eso es lo que quiere ver la gente" (which translates to: "Nemessis, I already told you, you're a very beautiful girl, and that's what people want to see"). Laughing at his own remarks, Mr. Padilla continued to objectify her by raising his voice to draw attention from others, stating: "Tú estás súper bonita, tienes que ser la imagen de la compañía" (wich translates to "You're so beautiful; you have to be the face of the company"). These degrading comments were made openly in the workplace and directed solely at Ms. Zubiria, making her feel deeply uncomfortable and singled out. Despite her discomfort, she reluctantly complied with the task to avoid jeopardizing her employment.

26. While distributing flyers, it was common for Mr. Padilla to observe her from the office entrance. He often made comments such as, "¡Eso! Así me gusta, qué linda" (wich

translates to "That's it! I like that. You look so beautiful"), further exacerbating her discomfort by focusing entirely on her physical appearance rather than her professional abilities.

27. On or around June 20, 2024, Mr. Padilla escalated his inappropriate behavior by pressuring Ms. Zubiria to participate in the recording of a promotional video for the company. He specifically requested that she appear in the video, stating: "Nemessis, tú vas a salir en el video. Yo quiero que tú seas la cara de esta empresa, como estás bien bonita, nos vas a atraer a todos los clientes" (wich translates to "Nemessis, you're going to be in the video. I want you to be the face of this company. You're so beautiful, you'll attract all the customers"). These comments were made openly in the workplace, where other employees frequently overheard them, reinforcing a pattern of singling her out based on her appearance.

28. Despite her discomfort, Ms. Zubiria attempted to reject these requests multiple times, explicitly telling Mr. Padilla how his comments and demands made her feel humiliated and stressed in front of her coworkers. She stated she was uncomfortable appearing in videos or social media posts.

29. However, as was typical, Mr. Padilla dismissed her concerns. When Plaintiff suggested that other employees could assist with the project, Mr. Padilla proposed an even more degrading suggestion: that her female coworkers record her. He further demanded that she not only appear in the video but also dance in it to align with a trending format[1] on social media, thereby further sexualizing and humiliating her.

30. Mr. Padilla's behavior created a profoundly hostile and intimidating work environment for Ms. Zubiria, where she was repeatedly degraded and objectified.

31. Following her refusal to participate in the video, Mr. Padilla began contacting Ms. Zubiria daily under the pretense of work-related matters. His intrusive behavior extended beyond workplace hours, as he made unsolicited WhatsApp calls to her personal phone, including late at night. While Mr. Padilla claimed these calls were for professional purposes, many instead focused on her whereabouts, activities, and personal

---

[1] In the context of social media, a "trend" refers to a topic, hashtag, video, challenge, or type of content that quickly gains popularity among users on a specific platform. Trends often spread rapidly through user interactions, mass sharing, and active engagement, frequently influencing collective online behavior. Platforms like TikTok, Twitter, Instagram, and Facebook play a significant role in the creation and dissemination of these trends, which are often short-lived but highly impactful. For instance, on TikTok, a trend might originate from a popular sound, dance, or video format, prompting thousands or even millions of users to replicate it. De Veirman, M., Cauberghe, V., & Hudders, L. (2017). Marketing through Instagram influencers: The impact of number of followers and product divergence on brand attitude. International Journal of Advertising. https://doi.org/10.1080/02650487.2017.1348035

associations. These invasive, unwarranted, and inappropriate actions caused significant distress to Ms. Zubiria, leaving her feeling helpless, intimidated, and unsure of how to confront the persistent advances of her manager.



Figure 1. WhatsApp Messages Between Mr. Padilla and Plaintiff Regarding Work Schedule and Unsolicited Calls. Left: Translated Version; Right: Original Version

32. On or around June 19, 2024, while hosting a TikTok Live session in the evening, Ms. Zubiria discovered that Mr. Padilla had joined her stream. Mr. Padilla not only observed but actively interacted with her during the live stream. This made Ms. Zubiria feel uncomfortable and deeply unsettled, perceiving it as an invasion of her privacy. Exhausted by the ongoing situation and realizing that Mr. Padilla's interest in her extended far beyond professional boundaries, she decided to block him on the platform.

33. Almost immediately that same night, at approximately 11:32 PM, Mr. Padilla sent a WhatsApp message to Ms. Zubiria, stating, "Desbloquéame" (translated as "Unblock me"), revealing that he had noticed her action and was actively trying to regain access to her TikTok profile. Feeling uneasy, Ms. Zubiria attempted to deflect his attention by pretending not to understand his request. However, Mr. Padilla's relentless behavior and harassment persisted despite her attempts to avoid conflict.

34. In early July 2024, Ms. Zubiria learned from other female employees that Mr. Padilla had been sharing her TikTok videos with male coworkers, making inappropriate comments about the content. He actively encouraged them to watch her videos and follow her account, further spreading a culture of objectification and discomfort in the workplace.

35. During the week of July 15–20, 2024, Mr. Padilla repeatedly approached Ms. Zubiria with unwelcome advances. Mr. Padilla directly asked her: "vamos a pegarnos una salidita" (wich translates to "Do you want to go out?") and "vamonos a comer algo, tu sabes que conmigo tienes el Uber gratis "(wich translates to "Do you want to go to dinner with me? You have free Uber with me")  He also added comments like "Me gusta que estes aquí, esa presencia tuya me encanta" (wich translates to "I like that you are here. I love your presence.").

36. Each time, Ms. Zubiria responded firmly, remembering him that she was a married woman and that she don't want any incovinence. Despite her clear rejections, Mr. Padilla persisted, dismissing her boundaries by saying, "Nada te va a pasar linda, vamos a hacerlo" (wich translates to "Nothing will happen sweety. Let's do it.")

37. On July 20, 2024, Mr. Padilla informed Ms. Zubiria that she would need to attend a Colombian Independence Day fair the following day to promote the company. He specifically requested that she take photos with customers and record videos, once again emphasizing her physical appearance as a marketing tool. While she reluctantly agreed to take photos, she firmly refused to participate in creating any videos.

38. On July 21, 2024, as instructed, Ms. Zubiria took photos with customers and sent the images to Mr. Padilla as proof of her work. She seized this opportunity to confront him in person, stating that his behavior was inappropriate, unprofessional, and unwelcome. She reminded him that she was married and explicitly asked him to stop his advances.

39. Mr. Padilla would often say to Ms. Zubiria, "tu sabes que si portas bien te va bien" (which translates to "You know that if you behave well, things will go well for you.") This was a clear reference implying that if Plaintiff acquiesced to his advances, she would receive some form of benefit within the company, whether related to her working conditions or otherwise.

40. With every advance made by Mr. Padilla, Ms. Zubiria firmly rejected him. However, as Mr. Padilla was the owner, Ms. Zubiria did not know how to handle the situation. As a recent arrival to the United States, she felt she could not afford to resign, as she needed to cover her living expenses.



Figure 2 Ms. Zubiria with clients on July 21, 2024.

41. By late July 2024, Defendants significantly reduced Ms. Zubiria's work schedule from six days a week to three, resulting in a substantial decrease in her income. When Ms. Zubiria inquired with Ms. Marcela Cadena (hereinafter "Ms. Cadena"), about the reason for this abrupt change, Ms. Cadena vaguely attributed it to low sales. However, no similar reductions in hours were imposed on her colleagues, raising the strong suspicion that this was a retaliatory act in response to her repeated rejection of Mr. Padilla's advances.

42. On September 13, 2024, Mr. Padilla escalated his inappropriate behavior by suggesting that Ms. Zubiria create a promotional video for the company. His comments explicitly objectified her physical appearance, stating, "Tú estás bien buena, ese cuerpazo tuyo está buenísimo" (which translates to "You are very sexy, your body is amazing"). Mr. Padilla continued, saying, "Esos videos que tienes me encantan, si hicieras esos videos aquí ganamos followers enseguida" (which translates to "I love those videos you make; if you made those videos here, we'd gain followers instantly"). Shocked and deeply disturbed, Ms. Zubiria immediately declined his degrading request.

43. That same day, desperate for support, Ms. Zubiria approached Ms. Diana Lopez , the owner assistant (hereinafter "Ms. Lopez") to report the ongoing harassment by Mr. Padilla. Plaintiff explained the situation in detail and expressed her emotional distress, stating, "Dianis yo creo que le voy a decir a Macerla. Esto ya me esta afectando mucho"

(wich translates to:"Dianis, I think I'll tell Marcela. This situation is starting affecting me greatly.")

44. Rather than providing assistance or taking her concerns seriously, Ms. Lopez dismissed her complaints, stating "Vea relajate y toca quedarse callada. En mi pais uno a veces se tiene que aguantárselo. Limpiate y sigue trabajando" (wich translates to "Calm down, and shut up. Sometimes in this country, you have to suffer to get things. Clean up your face and keep working.") This dismissive and callous response left Ms. Zubiria feeling hopeless, unsupported, and increasingly vulnerable to the hostile work environment created by Mr. Padilla's persistent harassment.

## PREGNANCY DISCRIMINATION FACTS

45. On September 16, 2024, Ms. Zubiria discovered she was pregnant. Plaintiff approached Ms. Lopez to share the news and requested that Ms. Cadena and Mr. Padilla as the owners, also be informed. Instead of receiving the warm support one would expect in such a moment, Ms. Lopez appeared visibly shocked and offered only a brief and perfunctory congratulations: "Congratulations, now go attend to the customers, and we'll talk later."

46. Later that day, both Ms. Cadena and Mr. Padilla informed Ms. Zubiria that they were aware of her pregnancy and expressed superficial happiness, stating that they were very happy for her.

47. That same day at 5:40 p.m., Ms. Lopez sent Ms. Zubiria a message informing her that, effective immediately, her schedule would be reduced to working only Saturdays and Sundays. The justification for this abrupt and drastic reduction in hours was a supposed email from the Transportation Security Administration (TSA), claiming that she could no longer work due to issues with her work authorization. However, no documentation or further explanation was provided to substantiate this. **EX 2. 2024.10.16_chat between Ms. Zubiria and Diana about the schedule changes_**

48. Ms. Zubiria, alarmed and distressed, responded by questioning why this issue was being raised now, particularly when it had never been an obstacle throughout her employment. She emphasized that as a pregnant woman, she now needed work more than ever to support herself and her unborn child. Despite her plea, Ms. Lopez offered no satisfactory response, leaving her in an uncertain and vulnerable position.

49. On September 26, 2024, at 11:45 a.m., Ms. Lopez informed Ms. Zubiria that she would no longer be permitted to work on either Saturday or Sunday, effectively eliminating her remaining hours. This decision left a pregnant woman, who had already communicated

her dire financial need, without any source of income. Such a decision not only lacked empathy but was inherently discriminatory, targeting her at a time when she was most in need of stability and support. **EX 3. 2024.10.26_chat between Ms. Zubiria and Diana about the schedule changes_**

50. Upon information and belief, other employees working under similar irregular work authorization conditions as Ms. Zubiria did not experience any adverse changes to their employment conditions whatsoever.

51. On October 11, 2024, Defendants aburbtly terminated Ms. Zubiria's employment without warning Ms. Lopez informed her via a phone call that there were no more hours available for her.

52. This sequence of events clearly demonstrates that the Defendants actions were not driven by legitimate business concerns but by discriminatory motives. This unjust termination was clearly influenced by two factors: her prior complaints about the pervasive sexual harassment she endured at the hands of Mr. Padilla and the perception that her pregnancy would render her less "useful" to the company. The timing and nature of these actions reflect a deliberate and calculated effort to penalize Ms. Zubiria for asserting her rights as a pregnant woman and an employee.

## INADEQUATE RESPONSE AND FAILURE TO PROTECT

53. Plaintiff reported on multiple occasions the harassment she endured almost daily in the workplace to management. However, despite her repeated complaints, Defendants failed to take any corrective action, allowing the harassment to persist unchecked throughout her employment.

54. Defendants lacked an effective anti-harassment policy and failed to implement adequate safeguards to prevent or address workplace harassment. While Defendants may have had an anti-harassment policy in name, it was not meaningfully enforced, leaving employees, including Plaintiff, vulnerable to ongoing misconduct.

55. Defendants did not maintain effective formal or informal complaint mechanisms for victims of harassment. Plaintiff and other employees had no reliable avenues to report inappropriate conduct without fear of retaliation.

56. Defendants failed to properly train supervisors and employees on workplace harassment and retaliation, resulting in a pervasive lack of awareness and accountability. This failure created an environment where harassment was tolerated, ignored, and normalized.

57. Defendants did not implement any meaningful monitoring mechanisms to ensure the effectiveness of their anti-harassment policies or complaint procedures. The absence of a genuine commitment to preventing harassment led to willful ignorance of complaints and direct retaliation against employees, including Plaintiff, who sought to assert their rights. Defendants failed to conduct timely, thorough investigations into harassment complaints and took no meaningful remedial action to stop the misconduct, thereby fostering a hostile and unlawful work environment..

## FIRST CAUSE OF ACTION
(Sexual Harassment – Quid Pro Quo)
Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq.)

58. Every fact alleged herein is repeated, re-alleged, and incorporated as though fully set forth herein.

59. The provisions of Title VII of the Civil Rights Act of 1964 applied to the Defendants and protected the Plaintiff while she worked for the Defendants.

60. Title VII prohibits an employer, like the Defendants, from engaging in quid pro quo sexual harassment by promising increased benefits in exchange for engaging in sexual conduct.

61. The Defendants engaged in unlawful discrimination by promising or alluding to Plaintiff receiving favorable treatment at work if she engaged in a romantic relationship with Defendants.

62. As a result of the unlawful conduct described herein, Plaintiff violated the provisions of Title VII.

## SECOND CAUSE OF ACTION
(Hostile Work Environment)
Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq.)

63. Every fact alleged herein is repeated, re-alleged, and incorporated as though fully set forth herein.

64. The provisions of Title VII of the Civil Rights Act of 1964 applied to the Defendants and protected the Plaintiff while she worked for the Defendants.

65. Title VII prohibits an employer, like the Defendants, from creating a hostile work environment based on sex, including by subjecting employees to pervasive and unwelcome sexual harassment.

66. The Defendants unlawfully subjected the Plaintiff to a hostile work environment by allowing or engaging in repeated acts of unwelcome sexual harassment, including inappropriate comments, advances, and retaliation, which created an environment that was intimidating, abusive, and offensive.

67. As a result of the unlawful conduct described herein, Plaintiff suffered harm.

### THIRD CAUSE OF ACTION
(Retaliation)
Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e-3(a))

68. Every fact alleged herein is repeated, re-alleged, and incorporated as though fully set forth herein.

69. The provisions of Title VII of the Civil Rights Act of 1964 applied to the Defendants and protected the Plaintiff while she worked for the Defendants.

70. Title VII prohibits an employer, like the Defendants, from retaliating against employees, like the Plaintiff, for opposing unlawful discrimination, including sexual harassment, or for reporting such conduct.

71. The Defendants unlawfully retaliated against the Plaintiff by reducing her work hours, creating additional hostile conditions, and ultimately terminating her employment after she opposed and reported sexual harassment.

72. As a result of the unlawful conduct described herein, Plaintiff suffered harm.

### FOURTH CAUSE OF ACTION
(Pregnancy Discrimination )
Pregnancy Discrimination Act of 1978 (PDA, 42 U.S.C. § 2000e(k))

73. Every fact alleged herein is repeated, re-alleged, and incorporated as though fully set forth herein.

74. The provisions of the Pregnancy Discrimination Act (PDA) applied to the Defendants and protected the Plaintiff while she worked for the Defendants.

75. The PDA prohibits an employer, like the Defendants, from discriminating against employees, like the Plaintiff, on the basis of pregnancy, childbirth, or related medical conditions.

76. The Defendants unlawfully discriminated against the Plaintiff by reducing her hours, imposing unfair work conditions, and ultimately terminating her employment after learning of her pregnancy.

77. As a result of the unlawful conduct described herein, Plaintiff suffered harm.

### FIFTH CAUSE OF ACTION
(Hostile Work Environment – Pregnancy Discrimination)
Pregnancy Discrimination Act of 1978 (PDA, 42 U.S.C. § 2000e(k))

75. Every fact alleged herein is repeated, re-alleged, and incorporated as though fully set forth herein.

76. The provisions of the Pregnancy Discrimination Act (PDA) applied to the Defendants and protected the Plaintiff while she worked for the Defendants.

77. The PDA prohibits an employer, like the Defendants, from subjecting employees, like the Plaintiff, to a hostile work environment based on pregnancy, childbirth, or related medical conditions.

78. The Defendants unlawfully subjected the Plaintiff to a hostile work environment by reducing her work hours, isolating her, and treating her differently from non-pregnant employees after learning of her pregnancy.

79. The Defendants' conduct created an intimidating, oppressive, and offensive workplace for Plaintiff, forcing her to work under conditions that were significantly more difficult than those imposed on her non-pregnant colleagues.

80. As a result of the unlawful conduct described herein, Plaintiff suffered harm.

### SIXTH CAUSE OF ACTION
(Failure to Accommodate – Pregnancy Discrimination)
Pregnancy Discrimination Act of 1978 (PDA, 42 U.S.C. § 2000e(k))

81. Every fact alleged herein is repeated, re-alleged, and incorporated as though fully set forth herein.

82. The provisions of the Pregnancy Discrimination Act (PDA) applied to the Defendants and protected the Plaintiff while she worked for the Defendants.

83. The PDA prohibits an employer, like the Defendants, from refusing to provide reasonable accommodations for an employee's pregnancy-related needs unless doing so would impose an undue hardship.

84. Plaintiff informed the Defendants of her pregnancy and the need for accommodations, yet the Defendants failed to engage in an interactive process or provide reasonable modifications to her working conditions.

85. Instead of providing accommodations, the Defendants took adverse actions against Plaintiff, including reducing her work hours and ultimately terminating her employment.

86. As a result of the unlawful conduct described herein, Plaintiff suffered harm.

## SEVENTH CAUSE OF ACTION
(Retaliation – Pregnancy Discrimination)
Pregnancy Discrimination Act of 1978 (PDA, 42 U.S.C. § 2000e(k))

87. Every fact alleged herein is repeated, re-alleged, and incorporated as though fully set forth herein.

88. The provisions of the Pregnancy Discrimination Act (PDA) applied to the Defendants and protected the Plaintiff while she worked for the Defendants.

89. The PDA prohibits an employer, like the Defendants, from retaliating against employees for asserting their rights related to pregnancy, childbirth, or related medical conditions.

90. The Defendants unlawfully retaliated against the Plaintiff after she disclosed her pregnancy and attempted to assert her rights by reducing her work hours, isolating her, and ultimately terminating her employment.

91. The timing of Defendants' actions, which occurred shortly after learning of Plaintiff's pregnancy, demonstrates a direct causal connection between Plaintiff's protected activity and Defendants' retaliatory conduct.

92. As a result of the unlawful conduct described herein, Plaintiff suffered harm.

## EIGHTH CAUSE OF ACTION
(Hostile Work Environment – Pregnancy Discrimination)
Pregnant Workers Fairness Act (PWFA, 42 U.S.C. § 2000gg et seq.)

93. Every fact alleged herein is repeated, re-alleged, and incorporated as though fully set forth herein.

94. The provisions of the Pregnant Workers Fairness Act (PWFA) applied to the Defendants and protected the Plaintiff while she worked for the Defendants.

95. The PWFA prohibits an employer, like the Defendants, from subjecting employees to a hostile work environment due to pregnancy, childbirth, or related medical conditions.

96. The Defendants unlawfully subjected Plaintiff to a hostile work environment by treating her differently from non-pregnant employees, isolating her, and reducing her hours without justification.

97. The Defendants' actions created an intimidating, hostile, and offensive work environment that forced Plaintiff to endure mistreatment solely because of her pregnancy.

98. As a result of the unlawful conduct described herein, Plaintiff suffered harm.

## NINTH CAUSE OF ACTION
(Failure to Accommodate – Pregnancy Discrimination)
Pregnant Workers Fairness Act (PWFA, 42 U.S.C. § 2000gg et seq.)

99. Every fact alleged herein is repeated, re-alleged, and incorporated as though fully set forth herein.

100. The provisions of the Pregnant Workers Fairness Act (PWFA) applied to the Defendants and protected the Plaintiff while she worked for the Defendants.

101. The PWFA requires employers, like the Defendants, to provide reasonable accommodations to employees affected by pregnancy, childbirth, or related medical conditions unless doing so would impose an undue hardship.

102. Plaintiff informed the Defendants of her pregnancy and the need for accommodations. However, the Defendants failed to engage in an interactive process or provide reasonable accommodations.

103. Instead of accommodating Plaintiff, the Defendants took adverse actions, including reducing her work hours and ultimately terminating her employment.

104. As a result of the unlawful conduct described herein, Plaintiff suffered harm.

## TENTH CAUSE OF ACTION
(Interference – Pregnancy Rights Violation)
Pregnant Workers Fairness Act (PWFA, 42 U.S.C. § 2000gg et seq.)

105. Every fact alleged herein is repeated, re-alleged, and incorporated as though fully set forth herein.

106. The provisions of the Pregnant Workers Fairness Act (PWFA) applied to the Defendants and protected the Plaintiff while she worked for the Defendants.

107. The PWFA prohibits an employer, like the Defendants, from interfering with an employee's rights to reasonable accommodations for pregnancy, childbirth, or related medical conditions.

108. The Defendants unlawfully interfered with Plaintiff's rights under the PWFA by failing to provide reasonable accommodations, reducing her work hours, and ultimately terminating her employment after she disclosed her pregnancy.

109. The Defendants' conduct had the effect of discouraging Plaintiff and other employees from exercising their rights under the PWFA.

110. As a result of the unlawful conduct described herein, Plaintiff suffered harm.

## ELEVENTH CAUSE OF ACTION
(Retaliation – Pregnancy Discrimination)
Pregnant Workers Fairness Act (PWFA, 42 U.S.C. § 2000gg et seq.)

111. Every fact alleged herein is repeated, re-alleged, and incorporated as though fully set forth herein.

112. The provisions of the Pregnant Workers Fairness Act (PWFA) applied to the Defendants and protected the Plaintiff while she worked for the Defendants.

113. The PWFA prohibits an employer, like the Defendants, from retaliating against employees who request accommodations or otherwise assert their rights under the PWFA.

114. The Defendants unlawfully retaliated against Plaintiff after she disclosed her pregnancy and attempted to assert her rights, including by reducing her work hours, isolating her, and ultimately terminating her employment.

115. The timing of Defendants' actions, which occurred shortly after Plaintiff's disclosure of her pregnancy, demonstrates a direct causal connection between her protected activity and Defendants' retaliation.

116. As a result of the unlawful conduct described herein, Plaintiff suffered harm.

## TWELFTH CAUSE OF ACTION
(Pregnancy Discrimination )
Pregnant Workers Fairness Act (PWFA, 42 U.S.C. § 2000gg et seq.)

117. Every fact alleged herein is repeated, re-alleged, and incorporated as though fully set forth herein.

118. The provisions of the Pregnant Workers Fairness Act (PWFA) applied to the Defendants and protected the Plaintiff while she worked for the Defendants.

119. The PWFA prohibits an employer, like the Defendants, from discriminating against employees, like the Plaintiff, based on pregnancy, childbirth, or related medical conditions.

120. The Defendants unlawfully discriminated against the Plaintiff by reducing her work hours, imposing adverse employment conditions, and terminating her employment because of her pregnancy.

121. As a result of the unlawful conduct described herein, Plaintiff suffered harm.

## THIRTEENTH CAUSE OF ACTION
(Sexual Harassment Quid Pro Quo)
New York State Human Rights Law (NYSHRL, N.Y. Exec. Law § 296)

122. Every fact alleged herein is repeated, re-alleged, and incorporated as though fully set forth herein.

123. The provisions of the New York State Human Rights Law (N.Y. Exec. Law § 296) applied to the Defendants and protected the Plaintiff while she worked for the Defendants.

124. The NYSHRL prohibits an employer, like the Defendants, from engaging in quid pro quo sexual harassment by promising increased benefits in exchange for engaging in sexual conduct.

125. The Defendants unlawfully engaged in sexual quid pro quo harassment by promising improved workplace benefits if Complainaing engaged in a romantic relationship with the Defendants.

126. As a result of the unlawful conduct described herein, Plaintiff suffered harm.

## FOURTEENTH CAUSE OF ACTION
(Sexual Harassment - Hostile Work Environment)
New York State Human Rights Law (NYSHRL, N.Y. Exec. Law § 296)

127. Every fact alleged herein is repeated, re-alleged, and incorporated as though fully set forth herein.

128. The provisions of the New York State Human Rights Law (N.Y. Exec. Law § 296) applied to the Defendants and protected the Plaintiff while she worked for the Defendants.

129. The NYSHRL prohibits an employer, like the Defendants, from creating or maintaining a hostile work environment based on an employee's sex, including through pervasive and unwelcome sexual harassment.

130. The Defendants unlawfully subjected the Plaintiff to a hostile work environment by engaging in repeated acts of unwelcome sexual harassment, including inappropriate comments, advances, and retaliatory conduct, which created an intimidating, offensive, and abusive workplace.

131. As a result of the unlawful conduct described herein, Plaintiff suffered harm.

## FIFTEENTH CAUSE OF ACTION
(Sexual Harassment - Retaliation)
New York State Human Rights Law (NYSHRL, N.Y. Exec. Law § 296)

132. Every fact alleged herein is repeated, re-alleged, and incorporated as though fully set forth herein.

133. The provisions of the New York State Human Rights Law (N.Y. Exec. Law § 296) applied to the Defendants and protected the Plaintiff while she worked for the Defendants.

134. The NYSHRL prohibits an employer, like the Defendants, from retaliating against employees, like the Plaintiff, for opposing unlawful discrimination, including sexual harassment, or for reporting such conduct.

135. The Defendants unlawfully retaliated against the Plaintiff by reducing her work hours, subjecting her to additional hostile conditions, and ultimately terminating her employment after she opposed and reported the unlawful sexual harassment.

136. As a result of the unlawful conduct described herein, Plaintiff suffered harm.

## SIXTEENTH CAUSE OF ACTION
(Pregnancy Discrimination )
New York State Human Rights Law (NYSHRL, N.Y. Exec. Law § 296)

137. Every fact alleged herein is repeated, re-alleged, and incorporated as though fully set forth herein.

138. The provisions of the New York State Human Rights Law (N.Y. Exec. Law § 296) applied to the Defendants and protected the Plaintiff while she worked for the Defendants.

139. The NYSHRL prohibits an employer, like the Defendants, from discriminating against employees, like the Plaintiff, on the basis of pregnancy or pregnancy-related conditions.

140. The Defendants unlawfully discriminated against the Plaintiff by reducing her hours, imposing adverse employment conditions, and ultimately terminating her employment after learning of her pregnancy.

141. As a result of the unlawful conduct described herein, Plaintiff suffered harm.

## SEVENTEENTH CAUSE OF ACTION
(Hostile Work Environment – Pregnancy Discrimination)
New York State Human Rights Law (NYSHRL, N.Y. Exec. Law § 296)

142. Every fact alleged herein is repeated, re-alleged, and incorporated as though fully set forth herein.

143. The provisions of the New York State Human Rights Law (NYSHRL, N.Y. Exec. Law § 296) applied to the Defendants and protected the Plaintiff while she worked for the Defendants.

144. The NYSHRL prohibits an employer, like the Defendants, from subjecting employees to a hostile work environment based on pregnancy, childbirth, or related medical conditions.

145. The Defendants unlawfully subjected Plaintiff to a hostile work environment by reducing her hours, treating her differently than non-pregnant employees, and fostering an oppressive and discriminatory work atmosphere after learning of her pregnancy.

146. The Defendants' actions created an intimidating, hostile, and offensive work environment that made it increasingly difficult for Plaintiff to perform her job under fair and equal conditions.

147. As a result of the unlawful conduct described herein, Plaintiff suffered harm.

## EIGHTEENTH CAUSE OF ACTION
(Failure to Accommodate – Pregnancy Discrimination)
New York State Human Rights Law (NYSHRL, N.Y. Exec. Law § 296)

148. Every fact alleged herein is repeated, re-alleged, and incorporated as though fully set forth herein.

149. The provisions of the New York State Human Rights Law (NYSHRL, N.Y. Exec. Law § 296) applied to the Defendants and protected the Plaintiff while she worked for the Defendants.

150. The NYSHRL requires employers, like the Defendants, to provide reasonable accommodations for employees affected by pregnancy, childbirth, or related medical conditions unless doing so would impose an undue hardship.

151. Plaintiff informed the Defendants of her pregnancy and the need for reasonable accommodations; however, the Defendants failed to engage in an interactive process or provide any meaningful adjustments to her working conditions.

152. Instead of accommodating Plaintiff, the Defendants took adverse actions, including reducing her work hours and ultimately terminating her employment.

153. As a result of the unlawful conduct described herein, Plaintiff suffered harm.

## NINETEENTH CAUSE OF ACTION
(Retaliation – Pregnancy Discrimination)
New York State Human Rights Law (NYSHRL, N.Y. Exec. Law § 296)

154. Every fact alleged herein is repeated, re-alleged, and incorporated as though fully set forth herein.

155. The provisions of the New York State Human Rights Law (NYSHRL, N.Y. Exec. Law § 296) applied to the Defendants and protected the Plaintiff while she worked for the Defendants.

156. The NYSHRL prohibits an employer, like the Defendants, from retaliating against employees who assert their rights related to pregnancy, childbirth, or related medical conditions.

157. The Defendants unlawfully retaliated against Plaintiff after she disclosed her pregnancy and attempted to assert her rights by reducing her work hours, isolating her, and ultimately terminating her employment.

20

158. The timing of Defendants' adverse actions, which occurred shortly after Plaintiff disclosed her pregnancy, demonstrates a direct causal connection between Plaintiff's protected activity and Defendants' retaliation.

159. As a result of the unlawful conduct described herein, Plaintiff suffered harm.

## TWENTIETH CAUSE OF ACTION
(Aiding and Abetting-Discrimination)
(New York State Human Rights Law (NYSHRL)

160. Every fact alleged herein is repeated, re-alleged, and incorporated as though fully set forth herein.

161. Defendant Padilla, in his role as CEO, was responsible for overseeing the policies and practices of the department and ensuring compliance with the New York City Human Rights Law (NYCHRL), including its provisions prohibiting discrimination, harassment, and retaliation in the workplace. Despite holding this leadership position, Defendant Padilla, failed to act to prevent or remedy the unlawful conduct that Plaintiff was subjected to during her employment.

162. Under NYCHRL, it is unlawful for any person to aid, abet, incite, compel, or coerce the doing of any act forbidden under this chapter, or to attempt to do so. Defendant Padilla, through her inaction and failure to intervene, aided and abetted the discriminatory, harassing, and retaliatory actions committed against Plaintiff.

163. As CEO, Defendant Padilla had the authority and responsibility to enforce policies and take appropriate action to prevent unlawful employment practices under the NYCHRL.

164. Despite Plaintiff's attempts to raise her concerns, Defendant Padilla failed to take any meaningful steps to address the hostile work environment and the sexual harrassment. This failure to act constitutes a violation of the NYCHRL, as Defendant Padilla by his inaction, aided and abetted the hostile work environment and the sexual harrassment.

165. As a result of Defendant Padilla's willful neglect and aiding and abetting of discriminatory acts, Plaintiff suffered significant emotional distress, loss of employment, and other damages. Defendant Padilla´s actions directly contributed to the adverse employment actions taken against Plaintiff, including the continuation of the hostile work environment and Plaintiff's termination.

## TWENTY-FIRST CAUSE OF ACTION
(Sexual Harassment Quid Pro Quo)
New York City Human Rights Law (NYCHRL, N.Y.C. Admin. Code § 8-107)

166. Every fact alleged herein is repeated, re-alleged, and incorporated as though fully set forth herein.

167. The provisions of the New York City Human Rights Law (N.Y.C. Admin. Code § 8-107) applied to the Defendants and protected the Plaintiff while she worked for the Defendants.

168. The NYCHRL prohibits an employer, like the Defendants, from engaging in quid pro quo sexual harassment by promising increased benefits in exchange for engaging in sexual conduct..

169. The Defendants unlawfully engaged in quid pro quo harassment by promising Plaintiff improved benefits in exchange for entering into a romantic relationship with the Defendants.

170. As a result of the unlawful conduct described herein, Plaintiff suffered harm.

## TWENTY-SECOND CAUSE OF ACTION
(Sexual Harassment - Hostile Work Environment)
New York City Human Rights Law (NYCHRL, N.Y.C. Admin. Code § 8-107)

171. Every fact alleged herein is repeated, re-alleged, and incorporated as though fully set forth herein.

172. The provisions of the New York City Human Rights Law (N.Y.C. Admin. Code § 8-107) applied to the Defendants and protected the Plaintiff while she worked for the Defendants.

173. The NYCHRL prohibits an employer, like the Defendants, from creating or maintaining a hostile work environment based on an employee's sex, including through pervasive and unwelcome sexual harassment.

174. The Defendants unlawfully subjected the Plaintiff to a hostile work environment by engaging in repeated acts of unwelcome sexual harassment, including inappropriate comments, advances, and retaliatory conduct, which created an intimidating, offensive, and abusive workplace.

175. As a result of the unlawful conduct described herein, Plaintiff suffered harm.

## TWENTY-THIRD CAUSE OF ACTION
(Sex Discrimination – Sexual Harassment)
New York City Human Rights Law (NYCHRL, N.Y.C. Admin. Code § 8-107)

176. Every fact alleged herein is repeated, re-alleged, and incorporated as though fully set forth herein.

177. The provisions of the New York City Human Rights Law (NYCHRL, N.Y.C. Admin. Code § 8-107) applied to the Defendants and protected the Plaintiff while she worked for the Defendants.

178. The NYCHRL prohibits an employer, like the Defendants, from discriminating against an employee on the basis of sex, including through unwelcome sexual advances, comments, and conduct.

179. The Defendants engaged in unlawful sex discrimination by subjecting Plaintiff to repeated and pervasive sexual harassment, including objectifying remarks, inappropriate requests, and coercive behavior.

180. The Defendants' conduct altered the terms and conditions of Plaintiff's employment by creating an oppressive and degrading work environment where Plaintiff's professional worth was repeatedly undermined based on her sex.

181. As a result of the unlawful conduct described herein, Plaintiff suffered harm.

## TWENTY-FOURTH CAUSE OF ACTION
(Retaliation – Sexual Harassment)
New York City Human Rights Law (NYCHRL, N.Y.C. Admin. Code § 8-107)

182. Every fact alleged herein is repeated, re-alleged, and incorporated as though fully set forth herein.

183. The provisions of the New York City Human Rights Law (NYCHRL, N.Y.C. Admin. Code § 8-107) applied to the Defendants and protected the Plaintiff while she worked for the Defendants.

184. The NYCHRL prohibits an employer, like the Defendants, from retaliating against employees who oppose, report, or complain about unlawful discrimination, including sexual harassment.

185. The Defendants unlawfully retaliated against Plaintiff after she objected to and rejected the repeated sexual harassment by reducing her work hours, subjecting her to an increasingly hostile work environment, and ultimately terminating her employment.

186. The timing and nature of Defendants' adverse actions demonstrate a direct causal link between Plaintiff's protected activity and Defendants' retaliatory conduct.

187. As a result of the unlawful conduct described herein, Plaintiff suffered harm.

**TWENTY-FIFTH CAUSE OF ACTION**
(Pregnancy Discrimination )
New York City Human Rights Law (NYCHRL, N.Y.C. Admin. Code § 8-107)

188. Every fact alleged herein is repeated, re-alleged, and incorporated as though fully set forth herein.

189. The provisions of the New York City Human Rights Law (N.Y.C. Admin. Code § 8-107) applied to the Defendants and protected the Plaintiff while she worked for the Defendants.

190. The NYCHRL prohibits an employer, like the Defendants, from discriminating against employees, like the Plaintiff, on the basis of pregnancy, childbirth, or related medical conditions.

191. The Defendants unlawfully discriminated against the Plaintiff by reducing her hours, imposing adverse employment conditions, and ultimately terminating her employment after learning of her pregnancy.

192. As a result of the unlawful conduct described herein, Plaintiff suffered harm.

**TWENTY-SIXTH CAUSE OF ACTION**
(Hostile Work Environment – Pregnancy Discrimination)
New York City Human Rights Law (NYCHRL, N.Y.C. Admin. Code § 8-107)

193. Every fact alleged herein is repeated, re-alleged, and incorporated as though fully set forth herein.

194. The provisions of the New York City Human Rights Law (NYCHRL, N.Y.C. Admin. Code § 8-107) applied to the Defendants and protected the Plaintiff while she worked for the Defendants.

195. The NYCHRL prohibits an employer, like the Defendants, from subjecting employees to a hostile work environment based on pregnancy, childbirth, or related medical conditions.

196. The Defendants unlawfully subjected Plaintiff to a hostile work environment by treating her differently from non-pregnant employees, isolating her, and reducing her hours without justification after learning of her pregnancy.

197. The Defendants' conduct created an intimidating, offensive, and oppressive workplace, making it increasingly difficult for Plaintiff to perform her job.

198. As a result of the unlawful conduct described herein, Plaintiff suffered harm.

### TWENTY-SEVENTH CAUSE OF ACTION
(Failure to Accommodate – Pregnancy Discrimination)
New York City Human Rights Law (NYCHRL, N.Y.C. Admin. Code § 8-107)

199. Every fact alleged herein is repeated, re-alleged, and incorporated as though fully set forth herein.

200. The provisions of the New York City Human Rights Law (NYCHRL, N.Y.C. Admin. Code § 8-107) applied to the Defendants and protected the Plaintiff while she worked for the Defendants.

201. The NYCHRL requires employers, like the Defendants, to provide reasonable accommodations to employees affected by pregnancy, childbirth, or related medical conditions unless doing so would impose an undue hardship.

202. Plaintiff informed the Defendants of her pregnancy and the need for reasonable accommodations. However, the Defendants failed to engage in an interactive process or provide any modifications to her working conditions.

203. Instead of accommodating Plaintiff, the Defendants took adverse actions, including reducing her work hours and ultimately terminating her employment.

204. As a result of the unlawful conduct described herein, Plaintiff suffered harm.

### TWENTY-EIGHTH CAUSE OF ACTION
(Retaliation – Pregnancy Discrimination)
New York City Human Rights Law (NYCHRL, N.Y.C. Admin. Code § 8-107)

205. Every fact alleged herein is repeated, re-alleged, and incorporated as though fully set forth herein.

206. The provisions of the New York City Human Rights Law (NYCHRL, N.Y.C. Admin. Code § 8-107) applied to the Defendants and protected the Plaintiff while she worked for the Defendants.

207. The NYCHRL prohibits an employer, like the Defendants, from retaliating against employees who assert their rights related to pregnancy, childbirth, or related medical conditions.

208. Plaintiff disclosed her pregnancy to the Defendants and requested fair treatment and continued employment. Shortly thereafter, Defendants retaliated against her by reducing her work hours and ultimately terminating her employment.

209. The timing of Defendants' actions, along with the pretextual justifications for reducing Plaintiff's hours and terminating her employment, demonstrate a direct causal connection between Plaintiff's protected activity and Defendants' retaliation.

210. As a result of the unlawful conduct described herein, Plaintiff suffered harm

**TWENTY-NINNTH CAUSE OF ACTION**
(Aider & Abbettor Discrimination)
New York City Human Rights Law (NYCHRL, N.Y.C. Admin. Code § 8-107)

211. Every fact alleged herein is repeated, re-alleged, and incorporated as though fully set forth herein.

212. Defendant Padilla, in his role as CEO, was responsible for overseeing the policies and practices of the department and ensuring compliance Title 8 of the Administrative Code of the City of New York, including its provisions prohibiting discrimination, harassment, and retaliation in the workplace. Despite holding this leadership position, Defendant Padilla, failed to act to prevent or remedy the unlawful conduct that Plaintiff  was subjected to during her employment.

213. Under Title 8 of the Administrative Code of the City of New York, it is unlawful for any person to aid, abet, incite, compel, or coerce the doing of any act forbidden under this chapter, or to attempt to do so. Defendant Padilla, through her inaction and failure to intervene, aided and abetted the discriminatory, harassing, and retaliatory actions committed against Plaintiff.

214. As CEO, Defendant Padilla had the authority and responsibility to enforce policies and take appropriate action to prevent unlawful employment practices under the Title 8 of the Administrative Code of the City of New York.

215. Despite Plaintiff's attempts to raise her concerns, Defendant Padilla failed to take any meaningful steps to address the hostile work environment and the sexual harrassment. This failure to act constitutes a violation of the Title 8 of the Administrative Code of the City of New York, as Defendant Padilla by his inaction, aided and abetted the hostile work environment and the sexual harrassment.

216. As a result of Defendant Padilla's willful neglect and aiding and abetting of discriminatory acts, Plaintiff suffered significant emotional distress, loss of employment, and other

damages. Defendant Padilla´s actions directly contributed to the adverse employment actions taken against Plaintiff, including the continuation of the hostile work environment and Plaintiff's termination.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Fed. R. Civ. P., Plaintiff demands a trial by jury on all questions of fact raised by this Plaintiff.

## PRAYER FOR RELIEF

**WHEREFORE** Plaintiff seeks all available remedies available under all causes of action listed herein in this Complaint and any and all remedies that the Court deems just and proper. Including but not limited to All lost wages and benefits, front pay, pre judgment and post judgment interest, liquidated damages, punitive damages, statutory penalties, emotional distress damages; recovery of reasonable costs, attorney fees, and expenses; equitable relief, and any other relief considered just and proper.

Dated: White Plains, New York
      April 9, 2025

EL-HAG & ASSOCIATES, P.C

_Jordan El-Hag_
Jordan El-Hag, Esq.
Attorney for the Plaintiff
777 Westchester Ave, Suite 101
White Plains, N.Y, 10604
(914) 218-6190 (p)
(914) 206-4176 (f)
Jordan@elhaglaw.com
www.elhaglaw.com